IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| NATAN'S TRADING, LTD., a corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ENERGIZER HOLDINGS, INC., a Missouri corporation; and AMERICAN COVERS, LLC dba HANDSTANDS, a Utah limited liability company,<br><br>Defendants. | **MEMORANDUM DECISION<br>AND ORDER<br>GRANTING PLAINTIFF'S MOTION<br>TO REMAND TO STATE COURT**<br><br>Case No. 2:19-cv-00587-HCN<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

Plaintiff sued Defendants in state court to enforce a contract. After Defendants removed the matter to this court, Plaintiff filed a motion to remand. Plaintiff argues that the contract requires that this litigation take place in state court. The court agrees. Plaintiff's motion is granted.[1]

**I.**

On January 1, 2016, Plaintiff Natan's Trading, Ltd., entered into a five-year representation agreement with Defendant American Covers, LLC, and its subsidiaries. *See* Dkt. No. 5-4. American Covers operates under the trade name Handstands and was recently purchased by Defendant Energizer Holdings, Inc. *See* Dkt. No. 13 ¶¶ 1–2.

---

[1] Having reviewed the parties' briefs and the filings in this case, the court finds oral argument unnecessary and rules on Defendants' motion "on the basis of the written memoranda of the parties." DUCiv R 7-1(f).

The representation agreement contains various provisions governing the business relationship between Natan's and American Covers. Paragraph N of the Agreement, on which the motion to remand is based, provides as follows:

> This agreement is presented to the Agent subject to final acceptance at the office of the Manufacturer in Draper, Utah (Salt Lake and Utah Counties), where the Agreement is made and is to be enforced. This agreement is to be governed by Utah law, and the Agent consents to the jurisdiction of the Utah courts for all purposes.

Dkt. No. 5-4 ¶ N. As the text of this provision indicates, the representation agreement—including Paragraph N—was drafted by American Covers and "presented to" Natan's. *Id.*; s*ee also* Dkt. No. 15 at 6.

On March 22, 2019, Plaintiff sued Defendants in state court in Salt Lake County to enforce the terms of the Agreement. *See* Dkt. No. 2-1. Five months later, Defendants removed the case to this court, invoking this court's diversity jurisdiction. *See* Dkt. No. 2 ¶¶ 9–10. The next month, Plaintiff moved to remand, arguing that Paragraph N requires that this case be litigated in state court. *See* Dkt. No. 15.

## II.

Because "the enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system," the Supreme Court has emphasized that "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Atlantic Marine Const. Co., Inc. v. United States Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63 (2013) (cleaned up); *see also id*. at 66.[2]

---

[2] Because Paragraph N states that "[t]his agreement is to be governed by Utah law," the meaning of this provision almost certainly turns on state law rather than federal law—though federal law may well govern at least some aspects of how the court gives effect to the provision, such as whether a remand to state court is warranted. The parties have not cited Utah cases in their briefs, however. And because the court is not aware of any "material discrepancies"

2

In *Atlantic Marine*, the Supreme Court addressed the proper procedural mechanisms for enforcing a forum-selection clause when a plaintiff sues in federal court, but the clause requires litigation in a different forum. When a plaintiff sues in one federal district, but the forum-selection clause requires that the suit be brought in a different federal district, "a forum-selection clause may be enforced by a motion to transfer under § 1404(a)." 571 U.S. at 52; *see also id*. at 59 ("Section 1404(a) . . . provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district."). And when a plaintiff sues in federal court but the forum-selection clause requires litigation in "a state or foreign forum," "the appropriate way to enforce" the clause is through dismissal under "the doctrine of *forum non conveniens*." *Id*. at 60.

Although *Atlantic Marine* thus provides extensive guidance on how a federal court should enforce a forum-selection clause against a *plaintiff* who brings suit in the wrong forum, it does not address how a forum-selection clause should be enforced against a *defendant* who removes a case to the wrong forum. Under Tenth Circuit precedent, however, forum-selection clauses are enforced against defendants in such circumstances by remanding the action to state court. *See, e.g.*, *Excell, Inc. v. Sterling Boiler & Mechanical, Inc*., 106 F.3d 318, 321–22 (10th Cir. 1997); *Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1345–46 (10th Cir. 1992).

The Tenth Circuit has further held that the requirement "that a waiver of one's statutory right to remove a case from a state to a federal court must be clear and unequivocal" is satisfied by a forum-selection clause requiring litigation in a particular state court, regardless of whether

---

between Utah law and federal law that would bear on the meaning and effect of the provision, *Excell, Inc. v. Sterling Boiler & Mechanical, Inc*., 106 F.3d 318, 320 (10th Cir. 1997), the court will follow the lead of the Tenth Circuit, which has generally interpreted forum-selection clauses in accordance with the principles set forth by the Supreme Court and its own precedent rather than by looking to the state or foreign law specified in the contract. *See, e.g.*, *K & V Scientific Co. v. BMW,* 314 F.3d 494 (10th Cir. 2002); *Excell*, 106 F.3d 318; *Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342 (10th Cir. 1992).

the clause explicitly addresses the Defendant's right to remove. *Milk 'N' More*, 963 F.2d at 1346 (quotation marks omitted). In *Milk 'N' More*, the Tenth Circuit thus held "that no error was committed by" the district court in remanding a contract action to state court in light of a contractual provision stating that "venue shall be proper under this agreement in Johnson County, Kansas." *Id*. at 1346; *see also id*. (stating that this contractual provision "seems reasonably clear and the wording strongly points to the state court of that county").

### III.

Under Tenth Circuit precedent, "forum selection clauses are frequently classified as either mandatory or permissive." *Excell,* 106 F.3d at 321. "Mandatory forum selection clauses contain clear language showing that jurisdiction is appropriate only in the designated forum." *Id.* (cleaned up). "In contrast, permissive forum selection clauses authorize jurisdiction in a designated forum, but do not prohibit litigation elsewhere." *Id*. (quotation marks omitted). In applying this distinction, the Tenth Circuit follows what it has described as the "majority rule":

> Where venue is specified in a forum selection clause with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified in a forum selection clause, the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive.

*K & V Scientific Co. v. BMW,* 314 F.3d 494, 499–500 (10th Cir. 2002) (cleaned up).

In addition, because "[f]or federal court purposes, venue is not stated in terms of 'counties'" but rather "is stated in terms of 'judicial districts,'" the Tenth Circuit has repeatedly held that where a venue provision "refers only to a specific county and not to a specific judicial district . . . venue is intended to lie only in state district court." *Excell*, 106 F.3d at 321; *see, e.g., id*. (holding that contractual provision providing that "[j]urisdiction shall be in the State of Colorado, and venue shall lie in the County of El Paso, Colorado" was mandatory and required litigation in state district court in El Paso County, Colorado); *Milk 'N' More*, 963 F.2d at 1346

(holding that contractual provision stating that "'venue shall be proper under this agreement in Johnson County, Kansas' seems reasonably clear and the wording strongly points to the state court of that county").

## IV.

Here, the court finds that Paragraph N "contain[s] clear language showing that jurisdiction is appropriate only in the designated for[a]." *Excell,* 106 F.3d at 321 (internal citation omitted). Accordingly, it is a "[m]andatory forum selection claus[e]." *Id.* And because the fora that it designates are the state courts of Salt Lake and Utah Counties, the court must remand this action to the Salt Lake County state court from which it was removed.

### A.

There can be little doubt that Paragraph N contains "mandatory or obligatory language." *K & V Scientific Co.*, 314 F.3d at 499 (internal citations omitted). It provides that the Agreement "is presented to [Plaintiff] . . . at the office of the [Defendants] in Draper, Utah (Salt Lake and Utah Counties), where the Agreement is made and *is to be* enforced." Dkt. No. 5-4 ¶ N (emphasis added). The language "is to be" is most naturally understood as mandatory. Indeed, the Second Circuit has expressly recognized the "mandatory force of the words 'are to be,'" holding that a forum-selection clause stating where proceedings "are to be brought" established obligatory venue. *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 386–87 (2d Cir. 2007). The court there held that the parties' use of the obligatory "words 'are to be' differentiates the instant clause from" clauses stating only where "disputes 'may' be brought." *Id.* at 387. There is of course no difference in the plural formulation "are to be," used in *Phillips*, and the singular formulation "is to be," used here.

5

To be sure, Paragraph N does not specifically use the word "venue." And unlike the clause in *Phillips*, it does not state where proceedings "are to be brought" but rather where the contract "is to be enforced." But "[t]here are no magic words, such as 'forum' or 'venue,' that must appear in a contract to create an effective designation of an exclusive forum. Any language that reasonably conveys the parties' intention to select an exclusive forum will do." *Water Energizers Ltd. v. Water Energizers, Inc.*, 788 F. Supp. 208, 212 (S.D.N.Y. 1992); *see also, e.g.*, *Phillips*, 494 F.3d at 386–87 (clause stating where proceedings "are to be brought" established mandatory forum); *Phoenix Glob. Ventures, Inc. v. Phoenix Hotel Assocs., Ltd.*, No. 04-CV-4991-RJH, 2004 WL 2360033, at *6 (S.D.N.Y. Oct. 19, 2004), aff'd, 422 F.3d 72 (2d Cir. 2005) (clause stating where "[a]ny proceeding shall be initiated" established mandatory forum). And because contractual rights are ordinarily enforced through litigation, the court has little doubt that designating where a contract "is to be enforced" is equivalent to mandating where suits to enforce the contract "are to be brought" or "shall be initiated."

Certainly, the clause here is readily distinguishable from the permissive clauses in other cases with which Defendants seek to classify it. In two of these cases, the clauses clearly used permissive language such as "may," which is nowhere to be found in Paragraph N. See *Pine Telephone Co., Inc. v. Alcatel-Lucent USA, Inc.*, 486 F. App'x 724, 726 (10th Cir. 2012) ("either party *may* initiate and prosecute any legal proceeding or seek enforcement of any judgment in *any* proper court having jurisdiction in the United States or elsewhere") (internal citation omitted; emphases added); *SBKC Service Corp. v. 1111 Prospect Partners, L.P.*, 105 F.3d 578, 580 (10th Cir. 1997) ("an action *may* be maintained in the State of Kansas and the County of Wyandotte") (other emphasis omitted); *cf. Phillips*, 494 F.3d at 387 (distinguishing mandatory language "are to be" from permissive language "may").

6

In Defendants' third case, the contract provided only that "[t]his agreement and all matters arising in connection with it shall be governed by the law of the State of New Jersey and shall be subject to the jurisdiction of the New Jersey Courts." *King v. PA Consulting Group, Inc.*, 78 F. App'x 645, 646 (10th Cir. 2003). While the contract thus provided that New Jersey law would govern and that the New Jersey courts would have jurisdiction, it did not mandate any specific venue. *See id*. Here, too, Paragraph N provides that "[t]his Agreement is to be governed by Utah law" and that Plaintiff "consents to the jurisdiction of the Utah courts for all purposes." Dkt. No. 5-4 ¶ N. But unlike in *King*, it *also* addresses venue—by specifically mandating where the Agreement "is to be enforced." *Id*.

## B.

The venue in which Paragraph N establishes that the Agreement "is to be enforced" is "Draper, Utah (Salt Lake and Utah Counties)." *Id*. Although there are no courts of general jurisdiction—state or federal—in Draper itself, there are state courts of general jurisdiction in both Salt Lake and Utah Counties. To be sure, Defendants are correct that there is also "a federal courthouse in Salt Lake County"—though not in Utah County. Dkt. No. 24 at 5. Regardless, the Tenth Circuit has made clear that "[f]or federal court purposes, venue is not stated in terms of 'counties'" but rather "is stated in terms of 'judicial districts.'" *Excell*, 106 F.3d at 321. It follows that where a forum-selection clause "refers only to a specific county and not to a specific judicial district . . . venue is intended to lie only in state district court." *Id.*; *see also Milk 'N' More*, 963 F.2d at 1346. The court finds this rule governs here, even though the forum-selection clause refers to two counties instead of just one. Paragraph N thus requires that this action be litigated in state court in Salt Lake or Utah County. It follows that this action must be remanded to the state

7

court in Salt Lake County from which it was removed. *See Excell*, 106 F.3d at 321–22; *Milk 'N' More*, 963 F.2d at 1345–46.

## C.

Two additional considerations support the court's reading of Paragraph N as a mandatory forum-selection clause that requires litigation in one of the designated state courts.

First, reading Paragraph N as a permissive forum-selection clause that does nothing more than authorize jurisdiction in the Utah courts would render the language "where the Agreement . . . is to be enforced" meaningless, since Paragraph N separately provides that Plaintiff "consents to the jurisdiction of the Utah courts for all purposes." Dkt. No. 5-4 ¶ N.[3] By contrast, the court's reading gives each part of Paragraph N operative effect and independent meaning. The first sentence addresses venue—where the agreement "is to be enforced," and the next sentence then addresses related, but distinct, issues: choice of law ("[t]his agreement is to be governed by Utah law") and jurisdiction ("the Agent consents to the jurisdiction of the Utah courts for all purposes"). *Id.* "It is well settled that effect should be given, if possible, to every word, phrase, clause, and sentence of a contract." *Cities Serv. Gas Co. v. Kelly-Dempsey & Co.*, 111 F.2d 247, 249 (10th Cir. 1940); *see also Jameson v. Mutual Life Ins. Co. of N.Y.,* 415 F.2d 1017, 1020 (5th Cir. 1969) ("An interpretation which gives a reasonable meaning to all provisions is preferable to one which leaves a portion of the [contract] useless, inexplicable or creates surplusage.").

To be sure, Defendants argue that, "read in context with the next sentence, which specifies that the Agreement is to be governed by Utah law and the Israel-based Plaintiff

---

[3] While consent was likely necessary to establish jurisdiction over Plaintiff, an Israeli corporation, *see* Dkt. No. 2 at 3, consent was presumably unnecessary to establish jurisdiction over Defendants, whose office, Paragraph N recites, is located in Draper, Utah.

consents to jurisdiction 'of the Utah courts for all purposes,'" the "first sentence of Paragraph N . . . merely recites facts that would support the exercise of personal jurisdiction over Plaintiff in Utah" because the "place of final acceptance, making, and enforcing of a contract in Utah all support Utah law having the most significant relationship with said contract and support Utah courts exercising jurisdiction over the parties to such a contract." Dkt. No. 24 at 4. Defendants offer no citations in support of this claim, however. And personal jurisdiction under Utah's long arm statute is determined by the existence of constitutionally sufficient minimum contacts between the defendant and the forum State, not by the most significant relationship between that State and the contract. *See* Utah Code Ann. § 78B-3-205. Perhaps Defendants mean to invoke Section 187 of the Second Restatement of Conflict of Laws, and to argue that the parties' statement that "the Agreement is to be enforced" in "Draper, Utah (Salt Lake and Utah Counties)" was included in Paragraph N to support the parties' choice of Utah law. *See* Restatement (Second) of Conflict of Laws § 187(2) (1971) ("The law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless . . . the chosen state has no substantial relationship to the parties or the transaction."). But even if this statement was intended to buttress the parties' choice of law, it does not follow that the statement is untrue or means something different from what it says. Indeed, this statement can support the parties' invocation of Utah law only if it in fact establishes where the contract will be enforced. On Defendants' reading, however, it does not. Because a meaningless recitation cannot establish a substantial relationship that could support the parties' choice of law, the language "where the Agreement is to be enforced" remains surplusage under Defendants' reading.

Second, the Tenth Circuit has made clear that "if there is ambiguity in" a forum-selection clause, the court "should construe it against the drafter." *Milk 'N' More*, 963 F.2d at 1346; *see*

*also*, *e.g.*, *Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955, 957 (5th Cir. 1974) (construing forum-selection clause against drafter). In this case, the clause was drafted by Defendant American Covers and presented to Plaintiff. *See* Dkt. No. 15 at 6; Dkt. No. 5-4 ¶ N. To the extent that Paragraph N is ambiguous, it should thus be construed against Defendants.

*   *   *

For all of these reasons, Plaintiff's Motion to Remand is **GRANTED.**

**IT IS SO ORDERED.**

DATED this 9th day of September, 2020.

BY THE COURT:

_____
Howard C. Nielson, Jr.
United States District Judge